Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ASOCIACIÓN RESIDENTES CONDOMINIO FERNÁNDEZ GARCÍA, INC.<br><br>Parte Apelada<br><br>v.<br><br>CENTRO RAMÓN FRADE PARA PERSONAS DE EDAD, INC.<br><br>Parte Apelante | KLAN202500413 | *APELACIÓN*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Civil núm.: CG2024CV04158 (803)<br><br>Sobre: Desahucio por Falta de Pago |

Panel integrado por su presidenta, la Jueza Lebrón Nieves, la Jueza Romero García y el Juez Robles Adorno.[1]

Robles Adorno, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de noviembre de 2025.

El 9 de mayo de 2025, el Centro Ramón Frade para Personas de Edad, Inc. (Centro Ramón Frade o parte apelante) compareció ante nos mediante el presente recurso de *Apelación* y nos solicitó que revoquemos la *Sentencia de Desahucio y Cobro de Dinero*, emitida el 2 de mayo de 2025, notificada el 6 de mayo de 2025, por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI o foro primario).[2]

En el aludido dictamen, el TPI declaró Ha Lugar la *Demanda* de desahucio y cobro de dinero presentada por la Asociación Residentes Condominio Fernández García, Inc. (la Asociación o parte apelada) en contra de la apelante y, por tanto, condenó a este al pago de ciertas sumas. Asimismo, el foro primario decretó el desahucio del Centro Ramón Frade de la propiedad objeto del litigio, de no ser satisfecha la deuda inmediatamente.

---

[1] Véase OATA-2025-170 del 3 de septiembre de 2025 en la que se designa al Juez Robles Adorno en sustitución del Juez Rivera Torres.
[2] Apéndice de la Apelación, Anejo 7, *Sentencia de Desahucio y Cobro de Dinero*, págs. 23-26.

Núm. Identificador:
SEN2025_____

Por lo fundamentos que exponemos a continuación, revocamos el dictamen apelado y desestimamos la acción instada.

**I.**

El caso de autos tiene su inicio el 7 de noviembre de 2025, cuando la parte apelada interpuso una *Demanda* en contra del apelante.[3] En esencia, adujo que era una corporación sin fines de lucro organizada a los fines de procurar el bienestar general del Condominio Benigno Fernández García. Asimismo, sostuvo que el Centro Ramón Frade se encontraba en posesión de un centro comunal, el cual era objeto de un contrato que fue suscrito con la pasada administración del condominio. Arguyó que, en abril de 2024, se constituyó una nueva administración en el condominio y no se había suscrito un contrato de arrendamiento, toda vez que, la apelante se negaba a ello.

En esa línea, alegó que lo anterior obligó a las partes a suscribir un contrato verbal, con un canon de arrendamiento de $800.00, por concepto de los meses desde abril hasta noviembre de 2024. Por tanto, solicitó que el TPI ordenara a la parte apelante el pago de $6,400.00 por concepto de los cánones adeudados y el desahucio de la parte apelante.

El 12 de noviembre de 2024, el foro primario emitió y notificó una *Orden de Señalamiento* en la que ordenó, *inter alia*, que la prueba documental fuera presentada en el portal electrónico del tribunal (SUMAC).[4]

En cumplimiento de lo anterior, el 25 de noviembre de 2024, la parte apelada interpuso una *Moci[ó]n en Cumplimiento de Orden,* en la que consignó la prueba documental a la plataforma electrónica del tribunal.[5]

---

[3] Entrada Núm. 1 del caso CG2024CV04158 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[4] Entrada Núm. 3 del caso CG2024CV04158 en el SUMAC.
[5] Entrada Núm. 7 del caso CG2024CV04158 en el SUMAC.

Así las cosas, el 17 de diciembre de 2024, la parte apelante presentó una *Moción para Solicitar Remedio y Solicitud de Desestimación.*[6] En síntesis, adujo que la *Demanda* debía ser desestimada dado que la parte apelada carecía de legitimación activa para exigir el cobro de dinero y solicitar el desahucio. Asimismo, argumentó que no se había acumulado una parte indispensable.

Ante este cuadro, el Centro Ramón Frade argumentó que de las alegaciones no surgía que la Asociación fuera dueña, apoderada o usufructuaria del inmueble de manera que pudiera instar un proceso de desahucio. En adición, arguyó que la *Ley de Condominios de Puerto Rico*, *infra*, establece al Consejo de Titulares como la autoridad suprema sobre la administración de un inmueble sometido al Régimen de Propiedad Horizontal y prohíbe expresamente que el Consejo de Titulares asuma una forma corporativa. Cónsono con lo anterior, añadió que cualquier contrato suscrito con la parte apelada, referente al inmueble sujeto al Régimen de Propiedad Horizontal, era nulo por contravenir la ley.

Por otro lado, señaló que del estudio de título presentado surge que el titular registral del inmueble era la Corporación de Renovación Urbana y Vivienda de Puerto Rico (CRUV), la cual constituía una parte indispensable en el pleito sin cuya acumulación este no podía adjudicarse.

El 14 de enero de 2025, la Asociación interpuso una *Moci[ó]n en Opocision [sic] a Solicitud de Desestimaci[ó]n por Falta de Parte Indispensable.*[7] En lo pertinente, rechazó el argumento de que la CRUV fuera una parte sin cuya presencia nno pudiera adjudicarse el litigio. Ello, toda vez que el propósito por el cual el inmueble fue sometido a un Régimen de Propiedad Horizontal consistió en que los

---

[6] Entrada Núm. 11 del caso CG2024CV04158 en el SUMAC.
[7] Entrada Núm. 17 del caso CG2024CV04158 en el SUMAC.

residentes tomaran el control del uso de las facilidades y organizaran un proceso de autogestión independiente de la burocracia gubernamental. Asimismo, señaló que, en el pasado, la parte apelante pagaba sin discusión los cánones de arrendamiento hasta que cesó en sus pagos, sin motivo alguno. En ese sentido, arguyó que la Asociación ejercía válidamente las facultades fiduciarias de administrar las facilidades del inmueble.

Atendidas ambas posturas, el 14 de enero de 2025, y notificada el 21 de enero de 2025, el TPI emitió una *Resolución sobre Moción de Desestimación* en la que denegó la solicitud dispositiva de Centro Ramón Frade.[8] Específicamente, resolvió que la Asociación había presentado evidencia suficiente sobre que la parte apelante cumplía con el pago de arrendamiento. Enfatizó que, el Código de Enjuiciamiento Civil de Puerto Rico dispone que cualquiera con derecho a disfrutar de una propiedad, tiene derecho de promover una acción de desahucio. Asimismo, quedó constatado que el Centro Ramón Frade había reconocido a la apelada como entidad con derecho a disfrutar el inmueble objeto del caso y que el petitorio de desestimación iba en contra de los propios actos del apelante. En ese sentido, el foro primario determinó que la Asociación tenía legitimación activa y que CRUV no era una parte indispensable.

Así las cosas, el 24 de febrero de 2025, el Centro Ramón Frade presentó una *Contestación a la Demanda* en la que reiteró los planteamientos ya esbozados y negó la existencia de una deuda exigible.[9]

El 24 de febrero de 2025, y notificada el 28 de febrero de 2025, el foro primario emitió una *Orden* en la que ordenó a las partes a presentar la prueba documental al portal electrónico del tribunal.[10]

---

[8] Entrada Núm. 18 del caso CG2024CV04158 en el SUMAC.
[9] Entrada Núm. 20 del caso CG2024CV04158 en el SUMAC.
[10] Entrada Núm. 23 del caso CG2024CV04158 en el SUMAC.

Por su lado, el 17 de marzo de 2025, la Asociación presentó una *Moci[ó]n en Cumplimiento de Orden* en la que añadió, como prueba documental, copia de dos (2) cheques emitidos por la parte apelante a favor de la parte apelada, por concepto del pago de los cánones correspondientes a octubre de 2023 y a cinco (5) meses de subvención de 2022 a 2023.[11]

De otra parte, el 14 de abril de 2025, la apelante instó una *Moción Solicitando Sentencia Sumaria* a los fines de consignar su prueba documental a la plataforma electrónica del Tribunal.[12]

El 2 de mayo de 2025, el foro primario celebró el juicio en su fondo, cuyo desfile de prueba constituyó únicamente en el testimonio de la señora Nora I. Pabón, presidenta de la Asociación Residentes Condominio Fernández García, Inc. Ese mismo día, y notificada el 6 de mayo de 2025, el TPI emitió una *Sentencia de Desahucio y Cobro de Dinero*[13] en la que formuló las siguientes determinaciones de hechos:

1. El complejo residencial Benigno Fernández García radica en Caguas, Puerto Rico.

2. Existe un centro comunal en el complejo residencial Benigno Fernández García.

3. La demandada ha ocupado en calidad de inquilino el centro comunal del complejo residencial Benigno Fernández García desde el año 2012, primero como inquilina de la antigua La Asociación de Residentes de Comunidad de Residentes de Benigno Fernández García, Inc. hasta la actualidad.

4. La demandante, la Asociación de Residentes del Condominio Fernández García, Inc., fue incorporada el 27 de abril de 2024.

5. Actualmente, es la demandante, la Asociación de Residentes del Condominio Fernández García, Inc. la entidad que ostenta el derecho a ocupar el centro comunitario del complejo residencial Benigno Fernández García.

6. El Centro Ramón Frade Para Personas de Edad, Inc. ocupa el centro comunitario del complejo residencial Benigno Fernández García sin pagar canon alguno a la entidad que tiene derecho a su posesión que es la

---

[11] Entrada Núm. 25 del caso CG2024CV04158 en el SUMAC.
[12] Entrada Núm. 27 del caso CG2024CV04158 en el SUMAC.
[13] Apéndice de la Apelación, Anejo 7, *Sentencia de Desahucio y Cobro de Dinero*, págs. 23-26.

demandante, la Asociación de Residentes del Condominio Fernández García, Inc.

7. La demandante, la Asociación de Residentes del Condominio Fernández García, Inc. ha facturado a razón de $800.00 mensuales los cánones de arrendamiento a la demandada El Centro Ramón Frade Para Personas de Edad, Inc. y esta se rehúsa a hacer pago de estos.

8. El Centro Ramón Frade Para Personas de Edad, Inc. adeuda a la Asociación de Residentes del Condominio Fernández García, Inc. por concepto de cánones de renta atrasados la cantidad de $9,600.00, cantidad que incrementa $800.00 por cada mes que transcurra de ello ocupando la propiedad sin hacer pago del canon establecido por los posesores de la misma.

Así pues, el TPI ordenó el desahucio de la parte apelante, de no satisfacer inmediatamente el pago de $9,600.00. En adición determinó que debía cumplir con el pago de $800.00 en concepto de canon de arrendamiento. Además, estableció la correspondiente fianza en apelación por la suma de $1,000.00.

Inconforme, y tras consignar la fianza impuesta,[14] el 9 de mayo de 2025, el Centro Ramón Frade interpuso ante nos el presente recurso de *Apelación* en el que coaligó los siguientes señalamientos de error:

> PRIMER ERROR**:** ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN AL DICTAR UNA SENTENCIA FIRMADA, SEGÚN SURGE DE LA SENTENCIA Y LA NOTIFICACIÓN CON FECHA DEL 2 DE MAYO DE 2025, CUANDO LA VISTA EN SU FONDO SE CELEBRÓ EL 6 DE MAYO DE 2025.
>
> SEGUNDO ERROR**:** ERRÓ EL TPI Y ABUS[Ó] DE SUS [SIC] DISCRECIÓN AL RESOLVER QUE TENÍA JURISDICCIÓN PARA ATENDER LA DEMANDA CUANDO NO LA TENÍA.
>
> TERCER ERROR**:** ERRÓ EL TPI Y ABUSÓ DE SUS [SIC] DISCRECIÓN AL NO CONVERTIR EL PLEITO EN UNO ORDINARIO, HABIENDO PLANTEAMIENTOS RELACIONADOS A FALTA DE LEGITIMACIÓN ACTIVA, FALTA DE PARTE INDISPESABLE [SIC] Y POR LO TANTO FALTA DE JURISDICCIÓN, HECHOS PROPIOS DE UN PLEITO ORDINARIO.
>
> CUARTO ERROR**:** ERRÓ EL TPI AL RESOLVER QUE LA PARTE RECURRIDA ERA LA ENTIDAD CON DERECHO A OSTENTAR EL CENTRO Y QUE POR LO TANTO TENÍA DERECHO A RECUPERAR LA POSECIÓN [SIC] DEL INMUEBLE EN CUESTIÓN, CUANDO HUBO AUSENCIA TOTAL DE PRUEBA.
>
> QUINTO ERROR: ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN AL CONDENAR A LA PARTE RECURRIDA AL COBRO DE DIENERO [SIC] CUANDO DE LAS PROPIAS

---

[14] Entrada Núm. 33 del caso CG2024CV04158 en el SUMAC.

DETERMINACIONES DE HECHOS DEL TPI SURGE QUE ENTRE LAS PARTES NUNCA HUBO UN CONTRATO O LA SUPUESTA DEUDA.

Cabe destacar que, el 12 de mayo de 2025, la parte apelante presentó una *Moción Informativa y Solicitud de Remedios* en la que solicitó que diéramos por no puesto el primer error señalado en su recurso de *Apelación*. A esos fines, el 15 de mayo de 2025, emitimos una *Resolución*, notificada el 20 del mismo mes y año.

Por su parte, el 23 de mayo de 2025, la apelada radicó una *Moci[ó]n Informativa* mediante la cual nos informó que no había sido contratada para representar a la parte apelada ante este foro apelativo y que su posición, tras consultar con esta, era remitirse a los escritos presentados en el foro primario.

En atención a ello, el 29 de mayo de 2025, y notificada el 30 de mayo de 2025, emitimos una *Resolución* en la que ordenamos a la Asociación que nos indicara si debíamos tomar la referida moción como su alegato en oposición. Ante ello, el 3 de junio de 2025, la apelada presentó una *Moci[ó]n en Cumplimiento de Orden* en la que hizo constar que su moción previa, en efecto, constituía su escrito en oposición.

Finalmente, y tras varios incidentes procesales, el 23 de junio de 2025, la apelante presentó una *Moción para Notificar Presentación de Transcripción [sic] y Suplementar Alegato*.

Así con el beneficio de la comparecencia de ambas partes, la transcripción de la prueba oral y el expediente ante nos, procedemos a disponer del recurso ante nuestra consideración.

**II.**

**A.**

En general, los tribunales tienen la obligación y responsabilidad de decidir los casos que se le presentan ante su consideración, incluso aquellos que con gusto evitaría. No obstante, como doctrina de autolimitación y de prudencia en el ejercicio del

Poder Judicial, los tribunales solo pueden resolver aquellas controversias que sean justiciables. *Hernández Montañez v. Parés Alicea*, 208 DPR 727, 738 (2022). El concepto de justiciabilidad "impone el deber de examinar si los casos que traban una controversia de índole constitucional cumplen con determinados e indispensables requisitos previo a una expresión". *Noriega v. Hernández Colón*, 135 DPR 406, 420 (1994). Lo anterior, pues, "los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas que tienen un interés real en obtener un remedio que haya de afectar sus relaciones jurídicas". *ELA v. Aguayo*, 80 DPR 552, 558-559 (1958). Por consiguiente, para poder ejercer de forma válida nuestra facultad de interpretar la ley, es necesario que el caso presente una controversia auténtica, definida y concreta, dentro de un contexto adversativo. De lo contrario, procede la desestimación del recurso presentado porque, como no existe una controversia real entre los litigantes, el tribunal debe abstenerse de adjudicarlo.

El Tribunal Supremo de Puerto Rico ha resuelto que una controversia no es justiciable en las siguientes circunstancias, a saber: (1) cuando la cuestión a resolver es una cuestión política; (2) cuando el pleito no está maduro; (3) cuando, después de iniciado el pleito, hechos posteriores lo convierten en académico; (4) cuando lo que se procura obtener es una opinión consultiva; y **(5) cuando las partes no poseen legitimación activa para incoar la acción presentada**. *Noriega v. Hernández Colón, supra*, pág. 421.

Nuestra jurisprudencia define la legitimación activa como "la capacidad que se requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante." *Hernández, Santa v. Srio. De Hacienda*, 208 DPR 727, 739 (2022). Para satisfacer dicho concepto, la parte promovente

tiene que demostrar: (1) que sufrió un daño claro y palpable; (2) que el daño es real, inmediato y preciso, no abstracto o hipotético; (3) la existencia de un nexo causal entre el daño y la acción que se ejercita; y, (4) que la causa de acción se ejerce al palio de la Constitución o de una ley. *Fund. Surfrider y otros v. ARPe,* 178 DPR 563, 572 (2010).

Se ha indicado que la legitimación activa significa que, como parte demandante, debe figurar aquella persona a favor de quien el derecho sustantivo establece el derecho objeto de la demanda. R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil,* 5ta ed., Lexis Nexis de Puerto Rico, 2010, sec.1002, pág. 106.

Así, el requisito de legitimación activa tiene su génesis en la doctrina de justiciabilidad y su función principal responde a asegurar que los tribunales atiendan aquellos asuntos que presentan casos o controversias que les permitan conceder remedios apropiados. *CRIM v. Méndez Torres,* 174 DPR 216, 225 (2008). Igualmente, la legitimación activa orbita, principalmente, en torno a la parte que promueve la acción y, en segundo lugar, a las cuestiones a adjudicarse. *Col. Ópticos de PR v. Vani Visual Center,* 124 DPR 559, 564 (1989) (citando a *Com. de la Mujer v. Srio. de Justicia,* 109 DPR 715, 723 (1980).

Cónsono con lo anterior, "[l]a doctrina de la justiciabilidad de las causas gobierna el ejercicio de la función revisora de los tribunales, fijando la jurisdicción de los mismos." *Smyth, Puig v. Oriental Bank,* 170 DPR 73, 75 (2007).

En armonía con lo que antecede, la jurisdicción es el poder o la autoridad que posee un tribunal para considerar y decidir casos o controversias con efecto vinculante entre las partes. *MCS Advantage, Inc. V. Fossas Blanco,* 211 DPR 135, 144 (2023); *Adm. Terrenos v. Ponce Bayland,* 207 DPR 586, 600 (2021); *Allied Mgmt. Group v. Oriental Bank,* 204 DPR 374, 385–386 (2020); *Beltrán Cintrón et al. v. ELA et al.,* 204 DPR 89, 101 (2020). Los tribunales

estamos impedidos de atender controversias en las que carezcamos de jurisdicción sobre la materia. *MCS Advantage, Inc. V. Fossas Blanco, supra*, pág. 144-145. La jurisdicción sobre la materia ha sido definida como "la capacidad del Tribunal para atender y resolver una controversia sobre un aspecto legal". *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 708 (2014).

Los tribunales deben ser celosos guardianes de su jurisdicción y no tienen discreción para asumir jurisdicción donde no la tienen. *SLG Szendrey Ramos v. F. Castillo*, 169 DPR 873, 882 (2007); *Morán v. Martí*, 165 D.P.R. 356 (2005). Los asuntos relacionados a la jurisdicción son privilegiados y deben resolverse con preferencia a cualquiera otro asunto. *SLG Szendrey Ramos v. F. Castillo, supra*, pág. 882. Los tribunales deben examinar su propia jurisdicción, así como del foro de donde procede el recurso ante su consideración. *SLG Szendrey Ramos v. F. Castillo, supra*, pág. 883.

En adición, destacamos que las Reglas de Procedimiento Civil, 32 LPRA Ap. V, no permiten que se presente una causa de acción a nombre de quien por ley no tiene derecho de lo que se reclama. Cónsono con ello, la Regla 15.1 de Procedimiento Civil, *supra*, dispone que no procede la desestimación automática a no ser que el foro primario conceda un término razonable para que la persona con legitimación activa ratifique la presentación del pleito, se una al mismo, o se sustituya por quien lo presentó, teniendo tal ratificación, unión, o sustitución, el efecto de que el pleito se haya iniciado por la persona con derecho.

**B.**

Con el fin de actualizar las normas que rigen la convivencia en los condominios, se promulgó la *Ley de Condominios de Puerto Rico*, Ley Núm. 129 de 16 de agosto de 2020 (*Ley de Condominios*), según enmendada, 31 LPRA sec. 1921 *et seq*. Asimismo, el referido estatuto tiene el propósito de establecer un régimen jurídico que

facilite la vida en convivencia y propicie la disponibilidad de viviendas en un área restringida de terreno. *Vázquez v. Consejo de Titulare,* 2025 TSPR 56, pág. 7. Con ello en mente, la Ley de Condominios contempla la convergencia de quienes manejan el Régimen de Propiedad Horizontal; en específico, (1) el Consejo de Titulares; (2) la Junta de Directores, y (3) el Agente Administrador. *Íd.*

Pertinente al caso de autos, el Artículo 3 (h) de la *Ley de Condominios,* 31 LPRA sec. 1921b, define el Consejo de Titulares como el "[ó]rgano rector y deliberativo del condominio, **con personalidad jurídica** y constituido por todos los titulares." (Énfasis suplido). En ese sentido, el Consejo de Titulares tiene la finalidad de propender al mejor funcionamiento de una propiedad sometida al Régimen de Propiedad Horizontal y proteger los intereses de los titulares. *Vázquez v. Consejo de Titulares, supra*, pág. 8; *Bravman, González v. Consejo de Titulares,* 183 DPR 827, 852 (2011).

Cónsono con lo anterior, el Artículo 48 de la Ley de Condominios, 31 LPRA sec. 1922t, reconoce al Consejo de Titulares como "la autoridad suprema sobre la administración del inmueble sometido al Régimen de Propiedad Horizontal." Igualmente, reitera que "tendrá personalidad jurídica propia y de sus obligaciones frente a terceros, responderán los titulares de forma subsidiaria y sólo con su apartamento." Además, el antedicho articulado es específico en cuanto a que el Consejo de Titulares "**no podrá asumir la forma corporativa** o de sociedad." *Íd.* (Énfasis suplido).

Es de umbral destacar que la referida prohibición, expresa e inequívoca en la actual Ley de Condominios, fue discutida por el Tribunal Supremo de Puerto Rico, durante la vigencia de la derogada *Ley de Condominios,* Ley Núm. 104 de 25 de junio de 1958, según enmendada, 31 LPRA ant. sec. 1291 *et seq.* Particularmente, nuestro Máximo Foro resolvió que:

[L]a propia naturaleza de las funciones del Consejo de Titulares . . . **no permiten que los titulares se incorporen** por las siguientes razones: (a) tal corporación no podría ejercer actos de dominio sobre el inmueble por no ser la dueña de los apartamentos y locales; (b) el diseño que inspira este estatuto reconoce la dinámica que entraña la convivencia social comunitaria y se erige sobre las bases de un poder ejercitado directamente por las personas afectadas que componen, como copropietarias, el condominio; y (c) tal entidad absorbería las facultades y deberes que la Ley de Propiedad Horizontal impone al Consejo de Titulares como ente separado y autónomo, y en tal extremo, contraviene el régimen legislado.

*Arce v. Caribbean Home Const. Corp.*, 108 DPR 225, 254 (1978).

Es decir, el Más Alto Foro entendió que, aunque la derogada pieza legislativa no expresaba una prohibición a la incorporación del Consejo de Titulares, el espíritu de la ley y los propósitos inherentes del referido organismo la impiden.

**III.**

En el caso de autos, la parte apelante nos solicita que revoquemos la *Sentencia de Desahucio y Cobro de Dinero* dado que cuestiona la apreciación de la prueba del TPI al entender probadas las acciones en cobro de dinero y desahucio. Asimismo, alegó que el TPI debió convertir el pleito sumario a uno ordinario ante los planteamientos sobre la ausencia de jurisdicción por falta de legitimación activa y de parte indispensable presentados por esta.

Ante el señalamiento de error por falta de jurisdicción, procedemos a discutir dicho asunto, toda vez que, versa sobre la autoridad del foro primario para atender el caso en sus méritos.

En esencia, el Centro Ramón Frade sostiene que la Asociación no ostentaba legitimación activa para instar el pleito de autos en representación de los residentes del Condominio Fernández García, toda vez que, la *Ley de Condominios, supra*, prohíbe la incorporación del Consejo de Titulares.

Como vimos, la *Ley de Condominios, supra*, prohíbe que el Consejo de Titulares asuma una forma corporativa. Asimismo, nuestro Tribunal Supremo ha interpretado que el Consejo de

Titulares no puede ser una corporación puesto que contraviene el propósito del citado estatuto y las propias facultades del Consejo de Titulares.

En el presente caso, el foro primario determinó, a base de las respectivas mociones sobre desestimación presentadas por ambas partes, que el argumento jurisdiccional no procedía, toda vez que, la entidad corporativa satisfacía las disposiciones del Código de Enjuiciamiento Civil, *supra*, en cuanto a que cualquier persona con derecho a disfrutar una propiedad puede interponer una causa de desahucio.

Ahora bien, es sabido que los tribunales debemos ser celosos guardianes de nuestra jurisdicción y no tenemos discreción para asumir jurisdicción donde no la tenemos. *SLG Szendrey Ramos v. F. Castillo*, 169 DPR 873, 882 (2007); *Morán v. Martí*, 165 D.P.R. 356 (2005). Ante ello, los asuntos jurisdiccionales deben atenderse con la mayor premura a cualquier otro asunto. En vista de lo anterior, colegimos que el TPI debió celebrar una vista evidenciaría, a los fines de recibir prueba suficiente para determinar si, en efecto, la Asociación ostenta legitimación activa y no contraviene lo establecido en la Ley de Condominios, *supra*.

Según surge de la transcripción de la prueba oral, el TPI se limitó a indicar que el asunto jurisdiccional sobre legitimación activa había sido resuelto mediante la denegatoria de la moción de desestimación y constituía un asunto final y firme.[15] Al así hacerlo, incidió en no atender el asunto jurisdiccional.

Atisbamos que, en vista de lo aquí resuelto, resulta innecesario discutir los otros señalamientos de error.

A la luz de lo esbozado, corresponde revocar la *Sentencia* apelada tras el foro primario no atender el asunto jurisdiccional planteado en el pleito.

---

[15] Transcripción de la prueba oral, págs. 8, 9 y 10, líneas 15-24, 1-25 y 1-3.

**IV.**

Por los fundamentos que anteceden, revocamos el dictamen apelado y devolvemos al foro primario el asunto de epígrafe a los fines de que celebre una vista evidenciaria para dilucidar el asunto jurisdiccional.

Notifíquese.

La Jueza Romero García concurre con la *Sentencia* dictada por la mayoría de este panel, sin opinión escrita.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones